349 So.2d 771 (1977)
STATE of Florida, Appellant,
v.
Sandra NEWSOME, Appellee.
No. 76-1341.
District Court of Appeal of Florida, Second District.
August 31, 1977.
Robert L. Shevin, Atty. Gen., Tallahassee, and Mary Jo M. Gallay, Asst. Atty. Gen., Tampa, for appellant.
Robert M. Focht, New Port Richey, for appellee.
PER CURIAM.
The trial court granted Sandra Newsome's motion to dismiss an information charging her with perjury by contradictory statements in violation of Section 837.021, Florida Statutes (1975). The state appeals. We reverse.
On October 10, 1975, Ms. Newsome voluntarily appeared at the state attorney's office where she testified under oath before Assistant State Attorney Webb. She stated that on the previous day Daniel McKeehan *772 had threatened her with a firearm and forced her to accompany him to various saloons. During the course of the investigation of these charges, another assistant state attorney interviewed a Ms. Kranczyn who stated that she had seen Ms. Newsome and McKeehan in one of the saloons on October 9, that she had not appeared distraught, and that she did not avail herself of opportunities to leave by herself. Appellee Newsome was subsequently subpoenaed to appear at the state attorney's office on October 21. On that date, without advising her of her constitutional rights, she was placed under oath and asked by Assistant State Attorney Webb if she could explain the inconsistency between her previous testimony and Ms. Kranczyn's statements. Ms. Newsome immediately replied, contrary to her previous testimony, that McKeehan had not pointed a gun at her on October 9. The state then filed an information charging appellee Newsome with perjury by contradictory statements. The information alleged that:
1. On the 10th day of October, 1975, the above-named defendant stated, "Daniel McKeehan threatened me with a firearm on October 9, 1975."
2. On the 21st day of October, 1975, the above-named defendant stated, while referring to the same incident, "Daniel McKeehan did not threaten me with a firearm on October 9, 1975."
Following a hearing on appellee Newsome's motion to dismiss, the trial judge determined that when Newsome was subpoenaed to testify on October 21 she was not the focus of the investigation, and therefore no transactional immunity was conferred upon her. However, the trial judge further determined that Ms. Newsome was granted use immunity. Though we agree that Ms. Newsome did not receive transactional immunity when she made her sworn statement on October 21, it is our opinion that she did not receive use immunity either.
In order for a witness' testimony to result in either transactional or use immunity under Section 914.04, Florida Statutes (1975), the witness must be compelled to testify. The fact that Ms. Newsome was subpoenaed to testify, standing alone, does not mean that her testimony was compelled. We so held in State ex rel. Foster v. Hall, 230 So.2d 722 (Fla.2d DCA 1970). See also Orosz v. State, 334 So.2d 26 (Fla.1st DCA 1976). Since she did not object to giving testimony, and the record does not reveal that she was coerced in any way, we conclude that her testimony was not compelled.
Further, since the trial judge concluded Ms. Newsome was not the target of any investigation when she testified on October 21, a conclusion amply supported by the record, the assistant state attorney was under no obligation to apprise her of her Miranda rights. See State ex rel. Foster v. Hall, supra.
Accordingly, the trial court's order dismissing the information against appellee Newsome is reversed, and this cause is remanded for further proceedings consistent herewith.
GRIMES and SCHEB, JJ., concur.
BOARDMAN, C.J., dissents with opinion.
BOARDMAN, Chief Judge, dissenting.
I respectfully dissent.
The first question presented by this appeal is whether statutory immunity attaches to testimony given by a witness testifying under subpoena where the witness has not invoked the fifth amendment privilege and the state has not specifically elicited the testimony.
A witness is required to give testimony otherwise protected by the fifth amendment only if the witness is afforded immunity from prosecution which is at a minimum coextensive with the protection from prosecution provided by the privilege against self-incrimination.[1]See, e.g., State *773 v. Chapman, 240 So.2d 491 (Fla.3d DCA 1970). Since statutory immunity is provided as compensation for deprivation of the constitutional privilege against self-incrimination, the parameters of immunity protection are best delineated by analogy to the parameters of fifth amendment protection.
Self-incriminating statements made under a voluntary waiver of the fifth amendment are admissible at trial. It is not necessary, however, to advise every person interviewed during a criminal investigation of his constitutional rights to establish a voluntary waiver. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For example, on-the-scene interviews are generally investigatory in nature; they do not reach the accusatory stage, the questioning is not coercive, and statements made during the questioning are considered to have been given pursuant to a voluntary waiver. There is every reason to believe that the statements were given pursuant to a voluntary waiver of the fifth amendment. When an investigation has focused on a particular individual it becomes accusatory in nature and, in some circumstances, the questioning is coercive. There is reason to believe that incriminating statements elicited by law enforcement authorities may not have been given pursuant to a voluntary waiver of one's constitutional rights. A suspect subjected to a coercive interrogation must be advised of and waive his constitutional rights or his statements are inadmissible at trial. Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); Miranda, supra; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Interrogation of a suspect in custody is inherently coercive and statements made without advice and waiver of his rights are inadmissible. Miranda, supra. A noncustodial interrogation of a suspect may be coercive, but that is determined on a case-by-case basis, and failure to advise the suspect of the constitutional safeguards is only some evidence of absence of a knowing and voluntary waiver. Beckwith, supra.
Like statements made by an on-the-scene witness, the testimony of an individual under subpoena may be admissible without advice of the fifth amendment. The coerciveness of this process and the admissibility of the testimony is determined on a case-by-case basis. The testimony of a witness who is the focus of a coercive interrogation who is not advised of his rights is inadmissible regardless of whether he expressly asserted his fifth amendment privilege.
I cannot agree with the majority that the trial judge in the case before us made a finding of fact that commission of perjury by appellee was not the focus of the questioning. In the order granting appellant's motion to dismiss the judge stated:
If, on October 21, 1975, the Assistant State Attorney was questioning the defendant on the subject of possible perjury as distinguished from an attempt to ascertain if a plausible explanation existed for what might be considered to be an apparent inconsistency between defendant's version of the incident and the version of another witness, then transactional immunity would attach; however, the Court is persuaded that the interrogating attorney's motives were to further investigate the apparent possible inconsistency only pursuant to the investigation of the reported criminal conduct of Daniel McKeehan. In any event, that question need not be pursued further or decided for the reasons hereinafter stated.
The trial judge expressly stated that he was not deciding whether the questions posed to appellee pertained to investigation of her perjury or to further the investigation of McKeehan. The judge's comments about the state's motives are inconclusive since the purpose of the interrogation is not necessarily "determinative of the true subject matter of the inquiry or investigation." State ex rel. Lurie v. Rosier, 226 So.2d 825, 827 (Fla.4th DCA 1969). Assistant State Attorney Webb stated at the hearing on the motion to dismiss that he did have reservations as to appellee's truthfulness, and I *774 believe his direction to explain the inconsistencies very well could have been a challenge to appellee's veracity on October 10. There is nothing in this order which could imply that appellee's testimony on October 21 was given pursuant to a voluntary waiver of her fifth amendment rights.
In view of its holding, the majority in this case was not required to address the second question presented by this cause, that is, whether immunity attaches to a compelled statement which is truthful but inconsistent with a statement made at a previous time. I believe that it does.
The fifth amendment does not protect a witness from prosecution for perjury for a false statement, and thereby prosecution for a perjured statement made under a grant of immunity is permissible. Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); McDonald v. State, 321 So.2d 453 (Fla.4th DCA 1975); State v. Chapman, supra. In perjury by false statement the falsity of the statement is an essential element of the crime. In perjury by contradictory statement it is not necessary to prove which of the statements is false.[2] Sections 837.02,.021, Florida Statutes (1975). Where the second of two statements is truthful use of that statement in prosecution for perjury by contradictory statements is barred by the immunity statute as is prosecution for any other criminal offense except perjury by false statement. See generally McDonald, supra. To hold otherwise would defeat the purpose of the immunity statute and violate the fifth amendment. If a witness could be compelled to testify without immunity in this situation he would be forced to incriminate himself on a charge of perjury by inconsistent statements, commit perjury by repeating the false statement to avoid prosecution for perjury by inconsistent statements, or commit contempt of court by refusing to testify. See Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), citing Murphy v. Waterfront Commission of New York, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
Since the state has not demonstrated that the ruling of the trial court was erroneous I would be inclined to affirm. In this case, however, because the admissibility of appellee's statement is contingent on the focus of the interrogation and the voluntariness of appellee's waiver of her constitutional rights, I would suggest that justice would best be served by remanding this cause to the trial court for an evidentiary hearing to determine whether the interrogation focused on the truthfulness of appellee's October 10 testimony or on McKeehan's actions on October 9 and whether she voluntarily waived her fifth amendment privilege.
NOTES
[1] Sec. 914.04, Fla. Stat. (1975), provides that a witness may not be prosecuted for any transaction concerning which he is required to testify and required testimony is inadmissible in the prosecution of that witness for any crime.
[2] The record in this appeal indicates that the second statement was truthful.